UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| BERNAR ESPANOL, and on behalf of all others similarly situated who consent to their inclusion,<br><br>                Plaintiff,<br><br>V.<br><br>AVIS BUDGET CAR RENTAL, LLC, and BUDGET RENT A CAR SYSTEM, INC.,<br><br>                Defendants. | Case No. 8:10-cv-944-T-35AEP |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION
FOR PROTECTIVE ORDER**

**I.     INTRODUCTION**

This is a misclassification case presenting a universe of five issues. The questions presented by the Complaint are (1) whether Defendants Avis Budget Car Rental, LLC and Budget Rent A Car System, Inc. (collectively, "Defendants") properly classified Plaintiff Bernar Espanol and the other Opt-In Plaintiffs as exempt under the Fair Labor Standards Act ("FLSA"); (2) whether Defendants' classification decision was not willful and made in good faith; and (3) whether this case is amenable to trial as a collective action. Also pending are Plaintiffs' Motion To Compel Contact Information For The Class (Docket Entry 213) and Plaintiffs' Motion For Protective Order (Docket Entry 220), which present, respectively, the questions of whether the Court should direct Defendants to provide Plaintiffs' counsel with certain contact information that their existing clients have not provided to their attorneys and whether the depositions of certain Plaintiffs should be postponed until Defendants do so. That is the universe of issues presently before the Court.

On August 21, 2012 and August 28, 2012, Plaintiffs pursued an unusual form of discovery that has nothing to do with any of those issues. Plaintiffs served on Defendants two notices of deposition, and two subpoenas *duces tecum* that require Defendants' outside counsel to submit to depositions and produce "all documents related to [outside counsel's] communications with potential and actual opt-in plaintiffs in this lawsuit." Because depositions of attorneys inherently constitute an invitation to harass the attorney to disrupt and delay the case (and naturally involve attorney-client privileged communications and attorney work product), a party who insists on such a deposition must show that (1) no means, other than deposing counsel, exist to obtain the information; (2) the information sought is relevant; and (3) the information is crucial to preparation of the case. Here, Plaintiffs cannot possibly establish that taking the deposition of Defendants' outside counsel, or subjecting Defendants' outside law firm to a subpoena *duces tecum*, has even a tangential bearing on any of the issues presented by this lawsuit. Accordingly, this Court should grant Defendants' Motion for a Protective Order and quash the notices of deposition and subpoenas *duces tecum* that Plaintiffs issued on August 21, 2012 and August 28, 2012.

## II.  BACKGROUND

On September 28, 2010, Plaintiff Bernar Espanol filed his First Amended Civil Action Complaint for Violations of the FLSA. Mr. Espanol alleges that he worked for Defendants as a Shift Manager, that he was improperly classified as exempt, and that he is therefore entitled to overtime compensation and other relief under the Fair Labor Standards Act. Mr. Espanol's Complaint further alleges that he may prosecute this lawsuit as a collective action under 29 U.S.C. § 216(b) on behalf of all persons who are or were formerly employed by Defendants at any time since April 20, 2007 as a Shift Manager in 82 airport locations. On October 18, 2011, this Court conditionally granted Mr. Espanol's request to prosecute this case as a nationwide

collective action.  Mr. Espanol is now joined by 123[1] opt-in Plaintiffs in the prosecution of this action.

In June 2011 – before this Court conditionally certified the lawsuit – Defendants' outside counsel, Littler Mendelson, P.C., interviewed certain unrepresented current and former Shift Managers to better understand their day-to-day duties and to gather facts pertaining to whether this case could be tried efficiently as a collective action.[2]  In connection with these interviews, Jessica Travers, a Littler Mendelson Associate, spoke with Mr. McWilliams to determine if he would be willing to be interviewed and, as he acknowledges, he declined to sign a "Voluntary Interview Consent Form."[3]  (*See* Exh. 3, Declaration of Robert McWilliams, ¶ 8.)

The next time Mr. McWilliams surfaced in conjunction with this lawsuit was on April 10, 2012, when Mr. McWilliams – a non-party to this action[4] – made a surprise appearance at a mediation session held before James Brown, Esq.  During the opening session of that settlement conference, Plaintiffs' counsel utilized a power point presentation.  The power point presentation contained a copy of a declaration signed by Mr. McWilliams.  In the declaration, Mr. McWilliams asserted that Ms. Travers, in an effort to induce him not to join the lawsuit, falsely told him that he would be compensated from any settlement reached in this lawsuit even if he

---

[1] The parties disagree about the number of viable opt-in Plaintiffs in this action, but that disagreement is not material to the instant motion.
[2] On June 28, 2011, Defendants served supplemental responses and objections to Plaintiff's Second Request for Production of Documents identifying the sixteen individuals from whom Defendants obtained written statements. (*See* Defendants' Supplemental Responses and Objections to Plaintiff's Second Request for Production of Documents, p. 2, attached hereto as Exh. 1.)  On July 21, 2011, Defendants then submitted six of these declarations in support of their Opposition to Plaintiff's Motion to Conditionally Certify Collective Action and Facilitate Notice to Potential Class Members.  (*See* Exh. 2, Defendants' Opposition to Plaintiff's Motion to Conditionally Certify Collective Action and Facilitate Notice to Potential Class Members, p. 5, n.4.)
[3] Mr. McWilliams states this conversation occurred in September or October of 2011.  (*See* Exh. 3, Declaration of Robert McWilliams, ¶ 6.)  A minor dispute about the time frame of the conversation is not germane to the issues presented in this Motion.
[4] On April 19, 2012, Mr. McWilliams filed a separate action in the Southern District of Florida.  In Mr. McWilliams' Complaint, a copy of which is attached as Exhibit 4, he alleges a misclassification theory under the FLSA.  Mr. McWilliams *does not* allege in his Complaint that he experienced any form of retaliation, nor does he reassert his allegations about Ms. Travers.

were not an opt-in Plaintiff. Once Defendants learned that Mr. McWilliams was a non-party, he was asked to leave the mediation and he complied.[5] As noted in Footnote 4, Mr. McWilliams then filed a separate lawsuit on April 19, 2012 which is silent on the claims about Ms. Travers asserted in his declaration.

After the mediation conference, Plaintiffs remained silent about Mr. McWilliams' allegations until August 21, 2012, when they issued a notice of deposition to Ms. Travers regarding "[c]ommunications [she] had with potential and actual opt-in plaintiffs including Robert McWilliams about the subject matter of this lawsuit." (Exh. 5, Notice of Deposition of Jessica T. Travers.)[6] Plaintiffs also issued a subpoena *duces tecum* to Ms. Travers, directing her to appear for a deposition and to bring with her "[a]ll documents related to deponent's communications with potential and actual opt-in plaintiffs in this lawsuit." (*See id*.) On the same day, Plaintiffs issued a materially identical notice of deposition and subpoena *duces tecum* to Littler itself (Exh. 8, Notice of Deposition of Littler Mendelson), and filed a Motion for a Protective Order in which they seem to assert that no deposition of any opt-in Plaintiff should go forward, in part, because of a "sinister" plot to "entice or intimidate shift managers away from this lawsuit." (Docket Entry 220, p. 5.) The conduct that Mr. McWilliams alleges, according to Plaintiffs, is part of that "sinister" scheme. (Docket Entry 220, p. 5.)[7]

---

[5] This information about the mediation between the parties is being used to establish the context of Defendants' knowledge of Mr. McWilliams' allegations and, therefore, its use does not violate Federal Rules of Evidence 408. *See Lifetime Homes, Inc. v. Residential Dev. Corp.*, 510 F. Supp. 2d 794, 811 (M.D. Fla. 2007); *Walters v. Cent. Fla. Invs., Inc*., No. 6:01-1390, 2006 U.S. Dist. LEXIS 21197, at *9 (M.D. Fla. Mar. 28, 2006).

[6] Plaintiffs issued the deposition notices via email to Defendants' counsel on August 21, 2012, email attached hereto as Exhibit 6. In addition, on August 28, 2012, Plaintiff served Ms. Travers and Littler Mendelson. *See* Subpoenas attached hereto as Exhibit 7.

[7] Assuming *arguendo* that Defendants intended to "entice or intimidate shift managers away from this lawsuit," we fail to see how the existence of such a practice would justify the delay of depositions of certain opt-in Plaintiffs. The two issues are not linked.

4

On August 23, 2012, pursuant to Local Rule 3.01(g), Defendants conferred with opposing counsel, explained the bases of its refusal to comply with Plaintiffs' attempt to take discovery from Defendants' outside counsel, and requested Plaintiffs withdraw their notices of deposition and subpoenas. Plaintiffs rejected that request. *See* Exh. 9, Defendants' Certificate of Compliance. When asked to state why they sought to depose Defendants' counsel, Plaintiffs' counsel answered thus:

> Thank you for your letter dated August 23, 2012. You have Mr. McWilliams' affidavit and your client has been aware of his claims for a long time. I agree that it is unusual to depose opposing counsel. We don't embark on it lightly. We now have two fired Avis employees who swear that Avis or its attorneys have been improperly seeking to influence employees against this lawsuit and has punished two people who would not give in to company pressure. If Avis is unduly influencing employees it is our duty to see that it stops and to collect evidence in this case without having to fight against that influence. Evidence not tainted by undue influence is likely to differ significantly from evidence given under pressure. Thus, our notice is crucial to our effort to discover suppressed evidence. It is also proper in connection with our right to invoke the Court's power to police the parties and attorneys in the action in front of it.
>
> Finally, I note that your letter does not dispute Mr. McWilliams' claims. While we will depose Ms. Travers and others to gather evidence concerning these claims, I would have thought that if you wished to assert that his claim was fabricated that you would have done so in your letter. While I cannot promise to be satisfied by any voluntary disclosures, I invite you as part of our attempt to confer to make a full disclosure concerning Ms. Traver's [sic] and other's (like those alleged in the Tetrault [sic] Declaration) activities related to this lawsuit and Avis employees.

(Exh. 10, Email from Plaintiffs' counsel to Defendants' counsel.)

### III.   ARGUMENT

#### A.   Standard Of Review

Federal courts "generally disfavor" the deposition of a party's attorney, and will permit such a deposition only in "limited circumstances." *Covington v. Walgreen Co.*, No. 1:11-CV-

5

22900, 2012 U.S. Dist. LEXIS 80216, at *9 (S.D. Fla. June 11, 2012).  The reason that such depositions are rarely permitted is that "depositions of attorneys inherently constitute an invitation to harass the attorney to disrupt and delay the case," and cause other harms.  *See West Peninsular Title Co. v. Palm Beach County*, 132 F.R.D. 301, 302 (S.D. Fla. 1990); *accord Floyd v. Suntrust Banks, Inc.*, No. 1:10-CV-2620, 2011 U.S. Dist. LEXIS 70964, at **4-5 (N.D. Ga. June 30, 2011).  Accordingly, to overcome a motion for a protective order and "depose opposing counsel, a party must show that (1) no means, other than deposing counsel, exist to obtain the information; (2) the information sought is relevant; and (3) the information is crucial to preparation of the case."  *AFSCME Council 79 v. Scott*, 277 F.R.D. 474, 479 (S.D. Fla. 2011).  Regardless of whether discovery from a party's attorney is sought via a subpoena or notice of deposition, the principles governing a motion for a protective order derive from Federal Rule of Civil Procedure 26(b).  *See id.* at 476-77.

      **B.**    **Because Plaintiffs Cannot Show That Defendants' Counsel Have Relevant Information, The Court Must Quash The Notices Of Deposition And Subpoenas Duces Tecum**

Plaintiffs cannot meet their burden to show relevancy or need.  The two reasons put forth by Plaintiffs – that they need to depose Littler attorneys so that they can "discover suppressed evidence" and to help them "invoke the Court's power to police the parties and attorneys in the action in front of it" – do not pass the straight-face test.

The latter rationale for deposing Littler attorneys is beneath contempt.  If opposing counsel really believed Mr. McWilliams' outlandish assertions (which even he did not have the temerity to assert in his own Complaint), they would have acted on those allegations much sooner.  Instead, opposing counsel did the exact opposite: they remained silent from the time they learned about Mr. McWilliams' allegations until April 10, 2012 (when they tried to leverage Mr. McWilliams' allegations to increase the settlement value of the case) and then again they

6

remained silent about those allegations until August 21, 2012 (when they injected Mr. McWilliams' allegations into a dispute over whether depositions of certain opt-in Plaintiffs should go forward, *see* Docket Entry 220, p. 5). Opposing counsel's opportunistic, tactical use of Mr. McWilliams' allegations belies the contention that those allegations have any relevancy to this lawsuit.[8]

Turning to the former rationale for the depositions, that Plaintiffs need the deposition to "discover suppressed evidence," once again Plaintiffs' delay belies their asserted need for the discovery. If Plaintiffs sincerely believed, on the basis of Mr. McWilliams' accusations, that Defendants' outside counsel were discouraging participation in the lawsuit, and thus suppressing evidence, the time for Plaintiffs to remedy that problem was when they learned about it, before April 10, 2012. That Plaintiffs waited until four weeks before the end of opt-in discovery to bring the McWilliams allegations to the Court's attention, issue notices of deposition to Defendants' counsel, and attempt to serve subpoenas on Defendants' attorneys reinforces the conclusion that (1) the allegations are irrelevant and (2) Plaintiffs do not require depositions of counsel to address any one of the five issues before the Court. Therefore, the Court should grant Defendants' Motion for a Protective Order and quash the notices of deposition and subpoenas *duces tecum* that Plaintiffs issued on August 21, 2012 and August 28, 2012. *See id.* at 478 (granting motion to quash subpoenas for documents and a relate deposition notice where party's attorney would not testify to any of the claims at issue).

---

[8] Plaintiffs also submitted a declaration from Donald Tetreault in support of their motion to stay the depositions of certain Opt-In Plaintiffs. (*See* Exhibit 11, Declaration of Don Tetreault, attached to Plaintiffs' Motion for and Memorandum in Support of Motion for Protective Order.) Mr. Tetreault's allegations about certain of Defendants' managers have nothing to do with Ms. Travers or Littler Mendelson and, therefore, do not relate at all --much less support -- Plaintiffs attempt to depose and seek documents from Ms. Travers and Littler Mendelson. Moreover, on August 20, 2012, Mr. Tetreault filed a separate action in the Eastern District of Michigan alleging retaliation in violation of the Fair Labor Standards Act relying on the allegations contained in his declaration. A copy of the Complaint is attached hereto as Exhibit 12. Consequently, the factual and legal issues surrounding the allegations contained in Mr. Tetreault's declaration will be litigated in his own case and not in the instant case.

7

      **C.**    **Because Plaintiffs Cannot Show That The Information They Seek Via Attorney Depositions Is Crucial To Their Case, The Court Must Quash The Notices Of Deposition And Subpoenas Duces Tecum**

Even if Plaintiffs could meet their burden of establishing relevancy, they would have to establish that the information they seek via the attorney depositions is "crucial" to their case. *E.g., Klayman v. Freedom's Watch, Inc.*, No. 07-22433, 2007 U.S. Dist. LEXIS 91990, at *12 (S.D. Fla. Dec. 14, 2007). This action, as noted above, presents five issues: (1) whether Defendants properly classified Plaintiff Bernar Espanol and the other opt-In Plaintiffs as exempt under the Fair Labor Standards Act ("FLSA"); (2) if not, whether Defendants' classification decision was not willful and made in good faith; (3) whether this case is amenable to trial as a collective action; (4) whether the Court should order Defendants to provide to Plaintiffs' counsel with contact information that their existing clients did not provide to their attorneys; and (5) whether Plaintiffs' depositions should be adjourned until Defendants does so. It cannot be said that deposing Defendants' attorneys regarding their conversations with Mr. McWilliams or other Shift Managers, is crucial to addressing any one of these issues. Moreover, Defendants have already provided Plaintiffs with the names of the individuals from whom statements were obtained and then presented some of those statements to the Court and Plaintiffs in support of Defendants' Opposition to Plaintiff's Motion to Conditionally Certify Collective Action and Facilitate Notice to Potential Class Members. Plaintiffs can therefore speak with those individuals, if they want to find out what was said to them in the course of obtaining the statements. Plaintiffs do not need to depose Defendants' attorneys for that information. Moreover, any other information that Plaintiffs may seek to gain from deposing Defendants' attorneys such as, for example, how they chose to interview certain individuals, is protected from disclosure by the attorney-client privilege and the attorney work product doctrine. *See W.*

8

*Peninsular Title Co. v. Palm Beach County*, 132 F.R.D. 301, 1990 U.S. Dist. LEXIS 12654, at **3-5 (S.D. Fla. Sept. 25, 1990); *Am. Fed'n of Employees (ASFCME) Council 79 v. Scott*, 277 F.R.D. 474, 2011 U.S. Dist. LEXIS 141792, at **11-13 (S.D. Fla. Dec. 5, 2011); *Klayman*, 2007 U.S. Dist. LEXIS 91990, at **9-12.

Accordingly, the Court should grant Defendants' Motion for a Protective Order and quash the notices of deposition and subpoenas *duces tecum* that Plaintiffs issued on August 21, 2012 and August 28, 2012.

## IV.     CONCLUSION

Attempting to force opposing counsel to testify as a witness "lowers the standards of the profession." *Shelton v. American Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986). This case illustrates the point. Mr. McWilliams' allegations about Defendants' counsel should be explored, if anywhere, in Mr. McWilliams' lawsuit.[9] Instead, Plaintiffs' counsel in this action have besmirched the standards of the profession by trotting out Mr. McWilliams' assertions every now and then for tactical advantage. For those reasons, and because Mr. McWilliams' allegations are neither relevant to the issues in this lawsuit nor crucial to proving Plaintiffs' cause of action, the Court should grant Defendants' Motion for a Protective Order and quash the notices of deposition and subpoenas *duces tecum* that Plaintiffs issued on August 21, 2012 and August 28, 2012.

---

[9] They are not being explored in that lawsuit, tellingly, because Mr. McWilliams has not dared to put forth his accusations in his Complaint, in a motion, or anywhere else beyond a PowerPoint presentation.

*/s/ Sarah E. McCarthy*
Ashley L. Fitzgerald
LITTLER MENDELSON, P.C.
111 North Magnolia Ave.
Suite 1250
Orlando, FL 32801-2366
Telephone:   (407) 393-2946
Facsimile:    (407) 393-2929
afitzgerald@littler.com

Kimberly J. Gost (*admitted pro hac vice*)
Matthew J. Hank (*admitted pro hac vice*)
Nina K. Markey (*admitted pro hac vice*)
Sarah McCarthy (*admitted pro hac vice*)
Sarah P. Bryan (*admitted pro hac vice*)
LITTLER MENDELSON, P.C.
1601 Cherry Street, Suite 1400
Philadelphia, PA  19103
Telephone:  (267) 402-3000
Facsimile:  (267) 402-3131
kgost@littler.com
mhank@littler.com
nmarkey@littler.com
smccarthy@littler.com
sbryan@littler.com

Elaine Wilkinson Keyser
LITTLER MENDELSON, P.C.
2 S Biscayne Blvd
Suite 1500
Miami, FL 33131
Telephone:   305-400-7500
Facsimile:    305-603-2552
ekeyser@littler.com

Dated:  August 29, 2012